**BEST INDUSTRIAL UNIFORM
SUPPLY CO., INC.,**
Appellant,

v.

**GULF COAST ALLOY WELDING,
INC., Appellee.**

No. 07–00–0326–CV.

Court of Appeals of Texas,
Amarillo.

Oct. 18, 2000.

**146**

Peter E. Pratt, Jr., Houston, for appellant.

Andrew P. McCormick, McCormick & McNeel, Houston, for appellee.

Before BOYD, C.J., and QUINN and REAVIS, JJ.

JOHN T. BOYD, Chief Justice.

Presenting one issue which, it contends, requires reversal, appellant Best Industrial Uniform Supply Co., Inc. (Best) challenges a take-nothing judgment, rendered after a bench trial, in favor of appellee Gulf Coast Alloy Welding, Inc. In its issue, Best contends the trial court abused its discretion by "not allowing Best to amend its disclosures and prohibiting Best's representative and sole witness from testifying at trial." For reasons we explain below, we reverse the judgment of the trial court.

Best had responded to appellee's request for witness disclosure by listing two persons it stated had knowledge of relevant facts. One of the listed witnesses was Dagmar Serrata, who was stated to have "knowledge of the calculation of Plaintiff's damages and of the authenticity of the business records of Plaintiff which concern Defendant."

At the hearing to determine whether Best should be permitted to present the testimony of a witness who had not been listed, Best's counsel informed the trial court that Serrata was Best's credit manager and she had quit about four or five months earlier. She was replaced by Raymond Sebesta. Counsel averred that he had not realized that he had disclosures on file until approximately a week before the hearing, but that appellee had not made any effort to depose any of Best's representatives. He further stated that the only evidence about which Sebesta would testify was as to the amount of damages alleged in the petition. After the trial court granted appellee's motion to exclude

Sebesta's testimony, appellee sought judgment and in response to that motion, Best's counsel commented, "[t]he only thing I can say is that if we don't have a witness, we can't put on a case." After Best was allowed to make a bill of exceptions showing what its tendered testimony would be, the trial court rendered judgment for appellee.

Rule of Civil Procedure 193.6(a) provides:

(a) *Exclusion of Evidence and Exceptions.* A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that:

(1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or

(2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

Tex.R.Civ.P. 193.6(a).

The progenitor of the present rule was Rule of Civil Procedure 215.5. That version of the rule permitted the use of testimony not disclosed in response to discovery only upon a showing of good cause. The present rule retains that provision with the addition of subsection (2), which permits the use of undisclosed testimony if its use will not unfairly surprise or prejudice the other party. Because the present rule, even with the addition, sets out some limited exceptions to sanctions which might be imposed under the rule, earlier decisions discussing the purpose of discovery rules and their proper application are relevant.

To properly discuss this appeal, it is necessary to analyze the policies and purposes underlying the formulation of our discovery rules. Our supreme court has instructed that the purpose of discovery is to "seek the truth, so that disputes may be decided by what the facts reveal, not by what facts are concealed." *Jampole v. Touchy,* 673 S.W.2d 569, 573 (Tex.1984). The discovery process furthers two basic goals for litigants. First, discovery provides parties with notice of the evidence that the opposing party intends to present. For example, with regard to witnesses, the discovery process insures that a witness will not be called when the opposing party has not previously identified him. *Sharp v. Broadway Nat. Bank,* 784 S.W.2d 669, 671 (Tex.1990); *see West v. Solito,* 563 S.W.2d 240, 243 (Tex.1978) (discovery allows parties the opportunity to obtain the fullest knowledge of issues and facts prior to trial). By encouraging full discovery of issues and facts prior to trial, parties are able to assess their respective positions, thereby facilitating settlements of disputes. *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex.1989).

Second, the discovery process prevents trial by ambush. *Clark v. Trailways, Inc.,* 774 S.W.2d 644, 646 (Tex.1989), *cert. denied,* 493 U.S. 1074, 110 S.Ct. 1122, 107 L.Ed.2d 1028 (1990). Indeed, our supreme court has also stated that a trial should be based upon the merits of the parties' claims and defenses, rather than an advantage obtained by one side through a surprise attack. *Smith v. Southwest Feed Yards,* 835 S.W.2d 89, 90 (Tex.1992).

Imposition of an available sanction is left to the sound discretion of the trial court. *TransAmerican Natural Gas v. Powell,* 811 S.W.2d 913, 917 (Tex.1991) (orig.proceeding). An appellate court will set aside the sanction only on a showing of a clear abuse of discretion. The test for

abuse of discretion is whether under the circumstances of the particular case, the trial court's action was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

The imposition of an available sanction must be "just." *TransAmerican,* 811 S.W.2d at 917; *Johnson v. Berg,* 848 S.W.2d 345, 352 (Tex.App.—Amarillo 1993, no writ). Whether a sanction is "just" is measured by two standards. First, a direct relationship must exist between the offensive conduct and the sanction imposed. *TransAmerican,* 811 S.W.2d at 917. The sanction must be directed against the abuse and toward remedying the prejudice caused to the innocent party. *Id.* In addition, the sanction should be directed against the offender. Therefore, the trial court must at least attempt to determine whether the conduct in question is attributable to counsel only, to the party only, or to both. *Id.* Under this record, any failure to supplement is solely attributable to Best's counsel.

Second, for a punishment to be "just," it must not be excessive. The punishment should fit the crime. *Id.* A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes. *Id.* Thus, it follows that the courts must first consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance, deterrence, and discourage further abuse. A trial court exceeds its discretion if the sanction it imposes exceeds the purposes that discovery sanctions are intended to further. *Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 849 (Tex.1992).

In this case, the sanction imposed was the most severe and is comparable to "sudden death" because it destroyed Best's opportunity to have a decision on the merits of the case. It was only through Sebesta's testimony that Best could maintain its suit and have the factfinder determine the validity of the dispute.

Again, our supreme court has cautioned that although punishment, deterrence, and securing compliance with discovery rules continue to be valid reasons to impose sanctions, those considerations alone cannot justify a trial by sanction. *Id.* Sanctions that by their severity prevent a decision on the merits of a case cannot be justified absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules. *Id.*; *TransAmerican,* 811 S.W.2d at 918; see *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642–43, 96 S.Ct. 2778, 2780–81, 49 L.Ed.2d 747 (1976).

Furthermore, we fail to see how appellee would have been prejudiced by the admission of this testimony. Best's counsel testified:

> The only testimony to be offered today by Mr. Sebesta is the amount of the actual damages as alleged in the petition, which is the same testimony that Best indicated it would offer in response to the disclosures.

> Ms. Seratta is the credit manager for Best Industrial. Raymond Sebesta is the credit manager for Best Industrial. The only difference is that Ms. Seratta no longer works for Best. Mr. Sebesta does. In other words, it's a distinction without a difference. That's it.

In its original petition, Best sought damages in the amount of $5,705.35 for rental charges, $11,713.50 for liquidated damages, and $5,571.50 for the replacement value of the products held in inventory for appellee. In Best's offer of proof, Sebesta testified

that Best was seeking those exact figures in damages. Additionally, appellee was aware that Best intended to call an employee to testify to damages but had not made any effort to depose that employee. Thus, there is a lack of any evidence or argument by appellee as to how it was unfairly prejudiced or surprised by the failure to disclose.

Since the record does not support the sanction imposed, we sustain Best's issue. Accordingly, the judgment is reversed and the cause remanded to the trial court.